## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| **UNITED STATES OF AMERICA** | **CRIMINAL ACTION** |
| **VERSUS** | **NO.  20-26** |
| **CURTIS EMILIEN** | **SECTION: "E" (2)** |

## ORDER AND REASONS

Before the Court is Defendant Curtis Emilien's Motion for Separate Trial as to Counts 1 and 2.[1] The Government filed an opposition,[2] and Defendant filed a reply.[3]

On June 30, 2021, the Court held oral argument on Defendant's motion. The Court allowed the parties to file post-hearing, supplemental memorandums. On July 13, 2021, supplemental memorandums were filed by the Government[4] and by the Defendant.[5]

On July 12, 2021, Defendant provided the Court with a sealed ex parte letter briefly summarizing and explaining the nature of the testimony he may give in his defense as to Count 1.[6]

## BACKGROUND

Defendant is charged under a two-count superseding indictment for two separate violations of 18 U.S.C. § 922(g), felon in possession of a firearm.[7]

---

[1] R. Doc. 53.
[2] R. Doc. 59
[3] R. Doc. 68.
[4] R. Doc. 75.
[5] R. Doc. 76.
[6] R. Doc. 78.
[7] R. Doc. 36.

Count 1 of the superseding indictment arises out of an incident that occurred on August 25, 2019, at the Faubourg Lafitte Apartment Complex in Orleans Parish.[8] Defendant is seen on camera wielding and shooting a firearm at an alleged attacker.[9] Defendant asserts he plans to claim affirmative self-defense with respect to Count 1, and that he may testify in his own defense.[10]

On or about April 28, 2020, Jefferson Parish Law enforcement responded to a license plate recognition camera reading of a stolen vehicle.[11]  The officers located the vehicle while it was stopped at a convenience store in Kenner, Louisiana.[12] Upon approaching the vehicle, a man, later identified as Defendant, was seen exiting the passenger side of the vehicle.[13] Defendant fled on foot, but was later apprehended.[14] An inventory search of the stolen vehicle revealed an AR-15 on the floorboard of the backseat.[15] The April 2020 incident forms the basis for Count 2 of the superseding indictment.[16] Defendant does not wish to testify with respect to Count 2.[17]

On February 20, 2020, Defendant was charged with Count 1 pursuant to a single-count indictment.[18] On November 20, 2020, the federal grand jury returned a two-count superseding indictment, charging Defendant with Counts 1 and 2.[19]

---

[8] R. Doc. 53-1 at p. 2; R. Doc 53-2 at p. 4; R. Doc. 75, Exhibit A. Exhibit A to R. Doc. 75 is a manually attached disc containing video surveillance footage of the August 2019 Faubourg Lafitte Apartment Complex shootout. *See* R. Doc. 77.
[9] *See* R. Doc. 75, Exhibit A.
[10] R. Doc. 53-1 at p. 2.
[11] R. Doc. 53-3 at p. 6.
[12] *Id.*
[13] *Id.*
[14] *Id.*
[15] *Id.*
[16] R. Doc. 36.
[17] R. Doc. 53-1 at p. 8.
[18] R. Doc. 1.
[19] R. Doc. 36.

The motion for severance of the trial of counts 1 and 2 was filed by Defendant on May 5, 2021.[20]

## LEGAL STANDARD

The instant motion to sever presents two separate questions.[21] The first is whether Counts 1 and 2 are properly joined in the superseding indictment.[22] If so, the next question is whether joinder is so prejudicial as to warrant separate trials.[23] The Court addresses each question in turn.

When reviewing a motion to sever, the preliminary inquiry is whether joinder was proper as a matter of law under Rule 8.[24] When an indictment charges a single defendant with multiple offenses, Rule 8(a) governs the propriety of joinder.[25] Rule 8(a) is to be broadly construed in favor of initial joinder.[26] Rule 8(a) states the charging document

> may charge a defendant in separate counts with 2 or more offenses if the offenses charged—whether felonies or misdemeanors or both—are of the same or similar character, or are based on the same act or transaction, or are connected with or constitute parts of a common scheme or plan.[27]

Even when initial joinder of offenses is proper under Rule 8(a), if it appears a defendant will be unfairly prejudiced by the joinder of offenses, Rule 14 provides the court may order separate trials.[28] The district court has discretion when deciding a motion to sever under Rule 14, and will not be reversed for denial of a severance unless there is

---

[20] R. Doc. 53.
[21] *See generally* R. Doc. 53, 53-1.
[22] *See* Fed. R. Crim P. 8.
[23] *See* Fed. R. Crim. P. 14.
[24] *United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993).
[25] *See* Fed. R. Crim P. 8(a).
[26] *United States v. Fortenberry*, 914 F.2d 671, 675 (5th Cir. 1990), *cert. denied*, 113 S.Ct. 1333 (1991).
[27] Fed. R. Crim. P. 8(a).
[28] Fed. R. Crim. P. 14(a). *See United States v. Stouffer*, 986 F.2d 916, 924 (5th Cir. 1993), *cert. denied*, 114 S.Ct. 115 (1993).

"clear prejudice to the defendant."[29] A defendant seeking severance under Rule 14 must overcome "significant obstacles."[30] Neither a quantitative disparity in the evidence nor the presence of a spillover effect requires severance.[31] A carefully tailored jury instruction will normally cure any risk of prejudice.[32] To the extent limiting instructions cannot eliminate that risk, the district court must consider whether any remaining prejudice outweighs the interests of judicial economy.[33] When offenses are properly joined under Rule 8, "a district court should grant a severance under Rule 14 only if there is a serious risk that a joint trial would compromise a specific trial right of one of the defendants, or prevent the jury from making a reliable judgment about guilt or innocence."[34]

## LAW AND ANALYSIS

### I.    The initial joinder of offenses was proper under Rule 8(a).

Defendant argues Counts 1 and 2 are misjoined under Rule 8(a) because the counts are not of the same or similar character.[35] Defendant argues the Fifth Circuit follows a "holistic" approach to Rule 8(a)'s "same or similar character" prong.[36] Defendant argues courts applying the holistic approach generally "refuse to permit joinder unless the offenses have some logical connection beyond a generic similarity in type or class," and "nearly all consider whether the charges joined involve common evidence and whether the offenses were allegedly committed close in time."[37] Defendant relies on *United States*

---

[29] *See United States v. Holloway*, 1 F.3d 307, 310 (5th Cir. 1993) (citing *United States v. MacIntosh*, 655 F.2d 80, 84 (5th Cir. 1981), *cert. denied*, 455 U.S. 948 (1982).

[30] *United States v. McRae*, 702 F.3d 806, 821 (5th Cir. 2012).

[31] *United States v. Krout*, 66 F.3d 1420, 1430 (5th Cir. 1995).

[32] *Zafiro v. United States*, 506 U.S. 534, 539 (1993).

[33] *See McRae*, 702 F.3d at 821—22.

[34] *Zafiro,* 506 U.S. at 534.

[35] R. Doc. 53-1 at p. 8.

[36] *Id.* at p. 10.

[37] *Id.* (quoting Matthew Deates, *Righting Categorical Wrongs: A Holistic Solution to Rule 8(a)'s Same-or-Similar-Character Prong*, 85 U. CHI. L. REV. 827, 844 (2018)).

4

*v. Jawara,* a Ninth Circuit case, as an example of a court applying the "holistic" approach to Rule 8(a)'s same or similar character prong.[38] The court in *Jawara* concluded an immigration document fraud offense and a marriage-related immigration fraud offense were not of the same or similar character under Rule 8(a) because the court interpreted same or similar as meaning "something beyond facial similarity of subject matter."[39] The court in *Jawara* noted it was "uncomfortable with a Rule 8 'same or similar character' inquiry that wholly ignores factors relevant to the question of similarity, such as temporal proximity, physical location, modes of operation, identity of the victims, likelihood of evidentiary overlap, and the like."[40]

Defendant cites *United States v. Holloway* for his contention that, when applying Rule 8(a)'s same or similar character prong, the Fifth Circuit follows the more liberal, holistic approach, rather than a literal approach.[41] Defendant argues the Fifth Circuit in *Holloway* signaled it follows a holistic approach because the court in that case "considered the temporal and evidentiary overlap of the two counts in its Rule 8 analysis."[42]

In *Holloway*, the Fifth Circuit held the district court committed reversible error in denying Holloway's motion for severance of robbery charges from a felon in possession of a firearm charge.[43] Between October 30, 1991, and December 9, 1991, several robberies were committed at food stores in Fort Worth, Texas.[44] Approximately two months after

---

[38] R. Doc. 53-1 at p. 9; R. Doc. 76 at p. 3.
[39] *United States v. Jawara*, 474 F.3d 565, 577 (9th Cir. 2007).
[40] *Id.* Defendant mentions *United States v. Coleman*, a Seventh Circuit case, as representative of the "literal approach." The literal approach compares the joined offenses for categorical, rather than evidentiary, similarity to determine whether initial joinder was proper under Rule 8(a)'s same or similar character prong. *See Coleman*, 22 F.3d 126 (7th Cir. 1994).
[41] R. Doc. 53-1 at p. 10-11; R. Doc. 76 at p. 2.
[42] R. Doc. 76 at p. 2.
[43] *United States v. Holloway*, 1 F.3d 307, 308 (5th Cir. 1993).
[44] *Id.*

the date of the last robbery, Holloway  was arrested for his alleged involvement in the robberies.[45] The arresting officers found a firearm on Holloway's person at the time of his arrest for the robberies.[46] Holloway was later charged with offenses related to the robberies and also for being a felon in possession of a firearm at the time of his arrest.[47] Holloway moved to sever the weapons charge from the robbery charges, asserting the joinder of offenses would prejudice him at trial.[48] The district court denied Holloway's motion for severance and the charges were tried together.[49] On appeal, Holloway argued the district court erred in refusing to sever the felon in possession of a firearm charge from the robbery charges because "the mere possession of a weapon when one is arrested, which is unrelated to the crime for which he is arrested, is not a charge that is of the 'same or similar' character as the commission of the underlying offense."[50] In reversing the district court, the Fifth Circuit explained the charges were not properly joined under Rule 8(a) because

> the government does not contend that the weapon found in Holloway's possession when he was arrested was the weapon used in the robberies. Furthermore, Holloway's arrest took place almost two months after the most recent robbery. Thus, we can see no basis for the conclusion that this count of Holloway's indictment was the same as the robbery counts, or that it was based on the robberies, or that it was part of a common scheme or plan involving the charged robberies.[51]

*Holloway* did not involve joinder of two counts charging violations of the same criminal statute; rather, *Holloway* involved joinder of violations of two completely different criminal statutes, which were not part of a common plan, scheme or transaction.

---

[45] *Id.*
[46] *Id.*
[47] *Id.*
[48] *Id.* at 309.
[49] *Id.*
[50] *Id.* at 310.
[51] *Id.* at 311.

The Court finds no evidence the Fifth Circuit has adopted the holistic approach applied by the Ninth Circuit in *Jawara*.

In this case, the offenses joined in the superseding indictment involve violations of the exact same statute, namely 18 U.S.C. § 922(g)(1). "The Fifth Circuit has found that crimes are of the same or similar character when counts charge violations of the same criminal statute, and further, that under such circumstances, a logical relationship between the counts exists."[52] The Court finds this case is more analogous to *United States v. Blake*[53] than to *Holloway*. In *Blake,* the defendant was charged under a seven-count indictment and was convicted on all counts.[54] On appeal, he argued the indictment "improperly joined two groups of offenses."[55] Blake argued the first group concerned his "unlawful possession and acquisition of firearms in March 1989," while the second group concerned "the events surrounding his arrest on April 12, 1990," and the firearms seized from his apartment after his April 12, 1990 arrest.[56] In finding the district court did not err in denying Blake's motion to sever the two groups of offenses, the Fifth Circuit explained that

> Both groupings of offenses contain the identical charge of unlawful possession of firearms by an illegal alien. Joinder was permissible under Rule 8(a).[57]

---

[52] *United States v. Alexander*, No. CRIM.06-60074-01, 2008 WL 2130179, at *3 (W.D. La. May 17, 2008) (citing *United States v. Duarte*, 52 F.3d 1067 (5th Cir.1995) (unpublished) and *United States v. Dillon*, 2006 WL950104 (E.D.La.2006) (finding counts properly joined because the alleged rapes violated the same statute).

[53] *United States v. Blake,* 941 F.2d 334 (5th Cir. 1991).

[54] *Id*. at 337.

[55] *Id.*

[56] *Id.*

[57] *Id*. at 338.

In this case, too, both offenses contain "the identical charge of" being a felon in possession of a firearm.[58] In *United States v. Walton*,[59] another court in this district relied on *Blake*. Walton moved to sever the first group of counts against him from the second group of counts.[60] Each group of counts related to carjacking offenses, with the first group arising out of a carjacking that took place on June 9, 2004, and the second group arising out of a carjacking that took place on January 9, 2007.[61] The defendant argued *Holloway* counseled for a severance of the two groups of counts.[62] The court stated "[w]hen offenses are joined as having the 'same or similar character,' the offenses need only be similar in category, not in evidence."[63] The court found, as in *Blake*, the two groupings of offenses were properly joined because both groups involved violations of the same criminal statutes.[64]

The Court finds Counts 1 and 2 of the superseding indictment were properly joined under Rule 8(a) as offenses of the "same or similar character" because Counts 1 and 2 both involve violations of 18 U.S.C. § 922(g)(1).

## II.    The defendant has demonstrated the requisite level of prejudice to warrant severance under Rule 14.

Having concluded Counts 1 and 2 are properly joined under Rule 8(a), the Court now considers whether severance is nevertheless warranted under Rule 14.[65] Defendant argues "the tremendous risk of serious prejudice in this case is far too large to justify the slight—indeed, nearly nonexistent—efficiencies of a joint trial."[66] Defendant argues

---

[58] *Id.*
[59] *United States v. Walton,* No. 09-cr-157, 2011 WL 3665145 (E.D. La. Aug. 19, 2011).
[60] *Id.*
[61] *Id.* at *5.
[62] *Id.* at *6.
[63] *Id.* (internal quotations omitted)
[64] *Id* at *7.
[65] Fed. R. Crim. P. 14.
[66] R. Doc. 53-1 at p. 15.

judicial economy does not favor joinder because "there is no substantial overlap in evidence" and "the evidence necessary to prove each of the offenses would be inadmissible in a trial of the other."[67]

Defendant argues the efficiency gains are minimal because, given that the offenses involve different underlying facts, there is likely to be little overlapping evidence or witness testimony.[68] In fact, Defendant argues there is no overlapping evidence, "except for Mr. Emilien's prior conviction," the existence of which will be stipulated, in accordance with his rights under *Old Chief v. United States*.[69]

As to prejudice, Defendant argues there are several issues which, considered cumulatively, render a joint trial not only prejudicial, but unconstitutional.[70] First, Defendant argues there is a high risk of prejudice because "the prosecution's evidence… with respect to Count 1 would not be admissible at trial to prove his guilt of Count 2 and vice versa."[71] Defendant argues, if this matter proceeds to a joint trial, the jury is "highly likely to draw impermissible inferences about Mr. Emilien's bad character or propensity to commit crime based solely on its viewing of the presentation of evidence as to both incidents."[72] Defendant further argues there is an added risk of prejudice in this case due to the fact that both charges involve bad acts of the same nature, meaning, there is a risk "the jury will conclude that Mr. Emilien possessed a gun on one occasion because he possessed it on another and, therefore, dismiss his self-defense on Count 1 and dismiss his claim of innocence on Count 2 by cross-contaminating evidence as to the two, wholly

---

[67] *Id.*
[68] *Id.* at pp. 15, 20.
[69] *Id.* at p. 20. *See Old Chief v. United States,* 519 U.S. 172, 174 (1997).
[70] R. Doc. 53-1 at p. 16.
[71] *Id.* at p. 19.
[72] *Id.* at p. 18.

separate counts."[73] Defendant also argues, if the charges are tried together, there is a serious risk the jury will conclude he is dangerous and discount his self-defense claims with respect to Count 1.[74] In addition, Defendant argues there is a risk of prejudice because "the jury will be forced to grapple with the application of widely variant governing legal principles,"—namely, actual possession and self defense as to Count 1, and constructive possession and failure to prove each element of the crime charged as to Count 2.[75] Finally, Defendant argues that trying Counts 1 and 2 in a single trial "will impermissibly interfere with Mr. Emilien's right to take the stand in his own defense, bringing that right into direct  conflict with his privilege against self-incrimination and his right to remain silent, as well as his right not to have a jury hold that silence against him."[76]

The prosecution argues the Defendant "has failed to meet his burden of showing actual prejudice he will suffer from having these counts tried together, and judicial economy will best be served by a single presentation of the evidence."[77] With respect to judicial economy, the prosecution argues the two felon in possession charges will "require substantially similar evidence and the same jury instructions."[78] The prosecution argues this case presents far less of a risk of prejudice than in *United States v. Hunstberry*,[79] a case in which the Fifth Circuit upheld the district court's denial of a motion to sever. The defendant in *Hunstberry* claimed the felon in possession of a firearm count would subject him to prejudice as to his drug counts, because the jury would be exposed to evidence of

---

[73] *Id.* at p. 21.
[74] *Id.*
[75] R. Doc. 53-1 at p. 21–22.
[76] *Id.* at p. 22.
[77] R. Doc. 59 at p. 6.
[78] *Id.*
[79] 956 F.3d 270 (5th Cir. 2020).

his prior conviction for the felon in possession of a firearm charge.[80] The prosecution argues the Defendant in this case has "no similar basis" for claiming severance because Counts 1 and 2 are both felon in possession of a firearm charges, and proof of his prior conviction is a necessary element for both counts.[81] The prosecution argues Defendant's desire to testify as to Count 1, but not as to Count 2, does not justify severance in this case because "self-defense is not applicable" in this case, and in any event, the Defendant has not met his burden of showing prejudice because "the defendant fails to any identify any 'strong need to refrain from testifying'" on Count 2.[82] The prosecution further argues that any possible "spillover effect" from proceeding to a joint trial can be cured through a jury instruction, which the jury is presumed to follow.[83]

In exercising its discretion under Rule 14, the court must weigh the interests of judicial economy against the risk of prejudice, considering whether the defendant has shown that a joint trial would compromise a specific trial right, or prevent the jury from making a reliable judgment about guilt or innocence.[84] To show unfair prejudice, the Defendant must show more than that a separate trial would offer him a better chance of acquittal.[85]

In *United States v. Duarte,* Duarte was convicted by a jury of two counts of being a felon in possession of a firearm, and he appealed the trial court's denial of his motion to sever the two counts for trial.[86] The first count, involving constructive possession, arose when Duarte was stopped and a police officer smelled marijuana emanating from the

---

[80] *Id.*
[81] R. Doc. 59 at p. 7.
[82] *Id*. at p. 8.
[83] *Id*. at 10.
[84] *United States v. Mitchell*, 484 F.3d 762, 775 (5th Cir. 2007).
[85] *United States v. Park*, 531 F.2d 754, 762 (5th Cir. 1976).
[86] 52 F.3d 1067 at *1 (5th Cir. 1995).

vehicle Duarte was driving.[87] The officer conducted an inventory search and found two firearms in the trunk.[88] The second count involved actual possession, in which an eyewitness saw Duarte drop a pistol as he fled on foot from an apartment he was in the process of burglarizing.[89] In his motion to sever, Duarte argued prejudice because "the jury might use evidence relevant only to one of the counts to convict Duarte on both of the counts."[90] Specifically, Duarte argued because the second count involved an eyewitness who saw Duarte drop a firearm, "the jury would be unable to disregard this eyewitness testimony when it deliberated on whether Duarte constructively possessed the two firearms found in the trunk of the Thunderbird in the first incident that was the basis for the first count."[91] The Fifth Circuit disagreed with Duarte, finding the risk of jury confusion and spillover was minimal, because the evidence as to each count was easy to separate and the district court gave a jury instruction separating the two counts.[92]

The risk of jury confusion and the risk of spillover evidence may well be cured through a jury instruction in this case. And, although the Fifth Circuit has "long recognized the obvious dangers inherent in trying a felon-in-possession count together with other charges, as it acts as a conduit through which the government may introduce otherwise inadmissible evidence of the defendant's prior convictions, thereby potentially tainting the reliability of the verdict rendered by the jury on the other counts,"[93] such concerns are absent where, as here, the fact of the prior conviction is an essential element to each of the underlying offenses. Nevertheless, the Court is concerned that the

---

[87] *Id.*
[88] *Id.*
[89] *Id.*
[90] *Id.* at *3.
[91] *Id.*
[92] *Id.*
[93] *United States v. McCarter*, 316 F.3d 536, 538 (5th Cir. 2002).

Defendant's right to take the stand to testify in his own defense as to Count 1 is impermissibly brought into conflict with his right to remain silent as to Count 2, and his right to have the jury not use that silence against him. Severance does not become mandatory merely because the Defendant claims he wishes to testify on one count but not on others.[94] A criminal defendant "seeking severance of charges because he wishes to testify as to some counts but not as to others has the burden of demonstrating that he has both important testimony to give concerning one count and a strong need to refrain from testifying on the other."[95] The defendant must present enough information, as to the nature of the testimony he wishes to give on one count and his reason for not wishing to testify on the other count, to enable the court to balance the interests of judicial economy against the defendant's interest in having a free choice whether to testify.[96]

For example, in *Ballis v. United States*, the defendant appealed his conviction, arguing the joinder of obstruction of justice charges with fraud charges prejudiced his ability to establish a defense on the obstruction charges by presentation of evidence demonstrating he fully confessed to the investigators the extent of his guilt on the fraud charges.[97] The defendant argued the joinder deprived him of his ability to remain silent on the fraud charges in one trial while also retaining his right to present evidence in his own defense on the obstruction counts in a separate trial.[98] The Fifth Circuit rejected the Defendant's claim of prejudice because he did not point out his dilemma to the trial court with sufficient specificity, he did not provide sufficient information as to what his

---

[94] *United States v. Ballis*, 28 F.3d 1399, 1408 (5th Cir. 1994) (citing *Alvarez v. Wainwright,* 607 F.2d 683, 685 (5th Cir.1979)).
[95] *Id.* (citing *United States v. Davis*, 752 F.2d 963, 972 (5th Cir.1985)).
[96] *See Ballis*, 28 F.3d at 1408.
[97] *Id.*
[98] *Id.*

testimony would be, and, moreover, on the first day of the trial, he had not yet indicated whether he would actually testify at a severed trial.[99]

In this case, video surveillance footage of the August 2019 incident, which forms the basis for Count 1 of the superseding indictment, shows Defendant possessing and shooting a firearm.[100] Without his testimony that he was acting in self-defense, the Defendant has no viable defense to offer with respect to Count 1. Furthermore, the Government conceded in its memorandum that such testimony, if allowed by the Court, would be important.[101] The Defendant provided the Court with a sealed ex parte letter, explaining the particular testimony he plans to give in support of his justification defense as to Count 1. The Court finds Defendant has met his burden of demonstrating he has important testimony to give concerning Count 1. As a result, the issue becomes whether Defendant has demonstrated he has a strong need to refrain from testifying with respect to Count 2.

The Defendant offered in his post-hearing memorandum the following six reasons why he does not wish to testify with respect to Count 2:

> 1) The evidence with respect to Count 2 is exceptionally weak, rendering Mr. Emilien's testimony and its inherent risks, put simply, not worth it and taking the stand plainly inadvisable.
>
> 2) Unlike Count 1, there is no actual evidence of Mr. Emilien possessing a weapon that he will have to explain to the jury. The burden will be entirely

---

[99] *United States v. Ballis,* 28 F.3d 1399, 1408 (5th Cir. 1994). *See also Baker v. United States,* 401 F.2d 958, 977 (D.C.Cir.1968)) (upholding refusal to sever in deference to defendant's desire to testify only on one count where, immediately before trial, defendant had not decided whether to testify); *United States v. Outler,* 659 F.2d 1306, 1313 (5th Cir.1981) (affirming refusal to sever where defendant "made no explanation as to why it was important for him to remain silent as to [some] charges, other than express his desire to do so."), *cert. denied,* 455 U.S. 950 (1982); *United States v. Forrest,* 623 F.2d 1107, 1115 (5th Cir. 1979) ("Appellant's bare allegation that he wanted to testify with respect to one count but not with respect to the other gave the trial judge no factual basis on which to evaluate possible prejudice.")

[100] R. Doc. 75, Exhibit A; R. Doc. 77.

[101] R. Doc. 75 at p. 6 ("*If* the court permits this defense, the government concedes such testimony would be important.")

on the prosecution and the evidence provided to the defense indicates that burden will be an exceptionally difficult one for the prosecution to satisfy.

3) The defense has evidence available to it other than Mr. Emilien's testimony. Indeed, the *prosecution*, not Mr. Emilien has evidence to answer for: the gun was found in the back seat next to a third person, not Mr. Emilien.

4) Mr. Emilien specifically chose not to give a statement to police with respect to Count 2 that he will need to explain, refute or qualify—meaning, testimony is unnecessary *and* he already has indicated his desire to remain silent and his reasonable concern of possible self-incrimination, a right the prosecution now seeks to infringe.

5) The prosecution has made abundantly clear that it intends to engage in ruthless impeachment practices, and Mr. Emilien's past in particular could be highly prejudicial, based on the evidence available to the defense and the prosecution's own allusions to his past at oral argument. There is absolutely no reason to subject Mr. Emilien to that exposure with respect to Count 2, and it would eviscerate his chance of an acquittal on a charge that, in terms of actual admissible evidence, is weak.

6) Mr. Emilien has no new information of any value whatsoever to provide to the jury through his own testimony. He need only deny the prosecution's allegations through counsel.[102]

Although the Court does not know at this point whether the government's evidence with respect to Count 2 is "exceptionally weak," the Court finds that, when considering the above-listed reasons in conjunction with one another, Defendant has met his burden of demonstrating he has legitimate reasons for not wanting to testify as to Count 2. If Counts 1 and 2 are tried together, Defendant will be placed in an unfair, proverbial bind—take the stand on Count 1 and suffer loss with respect to Count 2, or refuse to take the stand and suffer loss with respect to Count 1.[103] Further adding to the risk of prejudice is the fact the jury will be likely to discount Defendant's self-defense testimony on Count 1 if it has to grapple with the fact that Defendant has a separate firearms charge pending

---

[102] R. Doc. 76 at pp. 16-17.
[103] *See, e.g., United States v. Wainwright*, CRIM. A. No. 89-225, 1989 WL 87607 (E.D. La. Aug. 1, 1989).

against him in Count 2. Moreover, there is a heightened risk the jury will use Defendant's silence against him on Count 2 if forced to consider Defendant's vocal defense on Count 1 in direct contrast with his silence on Count 2.

Because Defendant has demonstrated he has "important testimony to give" with respect to Count 1, and legitimate reasons for not testifying with respect to Count 2, the Court finds "the defendant's interest in having a free choice with respect to testifying" outweighs considerations of judicial economy, which are not great in this case. The efficiency interests realized by trying these two counts together are limited because the only overlapping evidence is the fact that Defendant was convicted of a felony in the past, a fact that is subject to stipulation under *Old Chief v. United States*. In *Old Chief*, the United States Supreme Court held a district court trying a felon in possession of a firearm case abuses its discretion if it refuses a defendant's offer to stipulate to the fact of a prior conviction, and instead "admits the full record of a prior judgment, when the name or nature of the prior offense raises the risk of a verdict tainted by improper considerations, and when the purpose of the evidence is solely to prove the element of prior conviction."[104] Defendant has indicated he will so stipulate. In oral argument, the Government represented judicial economy will be furthered by a joint trial of Counts 1 and 2 because the Government intends to call a single witness to testify to the interstate commerce element on both firearm charges. The firearms involved in Count 1 (a 9 mm pistol) and Count 2 (an AR-15) are different types of weapons. It is unclear whether the witness's testimony will be duplicated unnecessarily if he must testify at separate trials for Count 1 and Count 2. Even if that is the case, the Court does not find these efficiency gains to be

---

[104] *Old Chief v. United States*, 519 U.S. 172, 174 (1997).

significant enough to outweigh the risk of prejudice to the Defendant. When, as here, offenses are joined because of their same or similar character, there is a heightened risk of unnecessary unfairness. "Unlike instances of joinder of offenses based on the same or closely connected acts or transactions," there is little time saved or efficiency gained when "offenses that are related only by being of the same type are joined, since the offenses are usually proven by different bodies of evidence [and], when totally unrelated, similar offenses are joined, defendant faces a 'considerable risk' of prejudice."[105]

<u>**CONCLUSION**</u>

**IT IS HEREBY ORDERED** that Defendant's Motion for Separate Trials as to Counts 1 and 2 is **GRANTED.**

**New Orleans, Louisiana, on this 29th day of July, 2021**

_____
**SUSIE MORGAN**
**UNITED STATES DISTRICT JUDGE**

---

[105] *United States v. Coleman*, 22 F.3d 126, 134 (7th Cir. 1994) (quoting 24 Moore's Federal Practice—Criminal § 608.02 [2]).